IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| JOSEPH HINTON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>PLATINUM MARKETING GROUP INC., D/B/A PLATINUM ELITE STAYS, a Florida corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Joseph Hinton ("Plaintiff Hinton" or "Hinton") brings this Class Action Complaint and Demand for Jury Trial against Defendant Platinum Marketing Group Inc. dba Platinum Elite Stays ("Defendant Platinum Elite Stays" or "Platinum Elite Stays") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls to cellular phone numbers. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Hinton, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

1

## PARTIES

1.      Plaintiff Hinton is a resident of Tampa, Florida.

2.      Defendant Platinum Elite Stays is a Florida corporation headquartered in Altamonte Springs, Florida.

## JURISDICTION AND VENUE

3.      This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.      This Court has personal jurisdiction over Defendant Platinum Elite Stays because it is headquartered in this District and directed its wrongful conduct from this District toward Plaintiff who also resides in this District. Venue is proper in this District because Defendant Platinum Elite Stays is headquartered here and the events giving rise to this action occurred from and into this District.

## INTRODUCTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.     According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in May 2026 alone, at a rate of 132.8 million per day. www.robocallindex.com (last visited June 25, 2026).

11.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.    "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.    "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.    Platinum Marketing Group Inc. operates using the d/b/a Platinum Elite Stays:

**PLATINUM MARKETING GROUP INC**
927 FERN ST STE 2600, ALTAMONTE SPRINGS, FL 32701-2744
Phone: 321-440-5952   Email:nageshrd29@gmail.com

| License Type | License# | Issued | Expires | Status |
|---|---|---|---|---|
| Seller of Travel<br>    Full Service Travel Agency | ST42405 | 03/05/20 | 08/21/26 | Registered |

**DBA/Other Names**
Platinum Elite Stays [3]

15.    Platinum Elite Stays books and sells vacation packages for consumers throughout the US.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://csapp.fdacs.gov/cspublicapp/businesssearch/businesssearch.aspx

[4] https://www.platinumestays.com/about

4

16.    Defendant Platinum Elite Stays places telemarketing calls to solicit sales of its vacation packages to consumers.

17.    Platinum Elite Stays places unsolicited pre-recorded calls to as per Plaintiff's experience.

18.    Other consumers have reported that they received pre-recorded calls from or associated with 877-247-7967, the same phone number that Plaintiff was asked to call:



---

[5] https://callfilter.app/18772477967





19.    In response to these calls, Plaintiff Hinton brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF HINTON'S ALLEGATIONS

20.    Plaintiff Hinton is the sole owner and user of his cell phone number ending in 9279.

21.    Plaintiff Hinton has owned his cell phone number for over 10 years.

22.    Plaintiff Hinton began receiving unsolicited calls to his cell phone from the Defendant beginning in November of 2025.

---

[7] https://www.reddit.com/r/TimeshareOwners/comments/1tvzzq9/no_stop_robocalls/

23. When Plaintiff Hinton did not answer the calls, a pre-recorded voicemail was left asking him to call 877-247-7967.

24. On approximately December 10, 2025, Plaintiff Hinton called 877-247-7967 and asked an employee to stop calling his cell phone number.

25. Despite his stop request, the calls did not stop.

26. For example, on December 17, 2025 at 11:30 AM, Plaintiff Hinton received a call to his cell phone from 813-568-9211.

27. This call was not answered, but a pre-recorded voicemail was left stating:

> "Sorry we missed you, but we were reaching out about your expired bonus vacations. The first 100 callers get a free vacation. Call us at 877-247-7967. Ho ho ho. Happy holidays."

28. Plaintiff Hinton could tell that the voicemail was pre-recorded because he received an identical voicemail almost daily since the beginning of December. In addition, the voicemail began with 2 seconds of dead silence before background sound and the speaker could be heard.

29. The 813 area code covers the Tampa Bay and Central Florida region, where Defendant operates its Platinum Elite Stays call center in Altamonte Springs, Florida, further confirming that the calls Plaintiff received originated from Defendant's Florida telemarketing operation.

30.    Plaintiff Hinton received an additional unsolicited call from the Defendant using different 813 numbers on December 18 and December 19, 2025.

31.    Neither of the aforementioned calls was answered, but a pre-recorded voicemail was left stating:

"[Sor]ry we missed you, but we were reaching out about your expired bonus vacations. The first 100 callers get a free vacation. Call us at 877-247-7967. Ho ho ho. Happy holidays."

32.    Plaintiff Hinton received additional unsolicited calls from the Defendant using different 813 numbers on:

- December 22, 2025;
- December 23, 2025; and
- December 27, 2025.

33.    None of the calls were answered, but each call resulted in the same pre-recorded voicemail stating:

"Hi, this is Teddy. I'm calling about your unused vacation credit. For the holidays, we're running a buy one, get one free with your choice of all-inclusive vacations to the Caribbean, cruises aboard major cruise lines like Norwegian and Royal Caribbean, and many more. Call us at 877-247-7967. That's 877-247-7967. Happy holidays."

34.    On December 30, 2025, Plaintiff Hinton received another unsolicited call to his cell phone from the Defendant using a 813 number.

35.    This call was not answered, but a pre-recorded voicemail was left stating:

"[Sor]ry we missed you, but we were reaching out about your expired bonus vacations. The first 100 callers get a free vacation. Call us at 877-247-7967. Ho ho ho. Happy holidays."

36.    Plaintiff could tell that the voicemails were all pre-recorded.

37.    The December 17, 18, 19, and 30 voicemails were pre-recorded because the spoken message is identical, including the first word that is partially cut-off. The pauses, intonation, wording and voice are the same.

38.    Additionally, the December 22, 23, and 27 voicemails are pre-recorded because they are also identical, featuring the same pauses, intonation, wording and voice.

39.    The characteristics of the voicemail messages that Plaintiff Hinton received from the Defendant confirm that they were pre-recorded rather than live messages. The messages exhibited: (1) uniform dead silence at the beginning and end, (2) identical wording and phrasing across multiple days, (3) identical truncation of the first word '[Sor]ry' on messages left on different dates, (4) artificial background sounds that did not vary between messages, and (5) no natural variation in tone, pacing, or delivery that would be present in live human speech. These characteristics are consistent with an artificial or prerecorded voice message being played into Plaintiff's voicemail system.

40.    877-247-7967 was the main contact number for Platinum Elite Stays on its Facebook page as of February 11, 2026:

10



8

41.    877-247-7967 is also advertised by Platinum Elite Stays as its contact number in online advertising, including:



9

---

[8] https://www.facebook.com/p/Platinum-Stays-61581838457573/

[9] https://www.instagram.com/p/DQt7DzYANU_/

11

42.    On 800notes.com, a consumer posted a complaint about pre-recorded voicemails that he was receiving from 877-247-7967 identifying the company name Platinum Marketing Group:



Rick
8 Jan 2026

👎  +2  👍

Platinum Marketing Group, Platinum Stay, Inc., www[x]platinumestay[x]com, robocaller leaving vacation voice messages. Altamonte Springs, FL.

*Caller: Platinum Stay, Inc.*
*Call type: Telemarketer*                                                            10

43.    Plaintiff's attorneys sent a demand for consent email to Platinum Elite Stays on December 28, 2025, but no response was received.

44.    Plaintiff Hinton has never provided his cell phone number to Platinum Elite Stays or any of its call centers, and has never consented to receive calls to his cell phone from the Defendant.

45.    Plaintiff has never had any business relationship with the Defendant. Plaintiff has never purchased any products or services from the Defendant, never inquired about their products or services, and never provided his contact information to the Defendant. The Defendant's claim that Plaintiff had "expired bonus vacations" is false, as Plaintiff never possessed any such vacations from the Defendant.

46.    The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of the Defendant have harmed Plaintiff Hinton in the form of

---

[10] https://800notes.com/Phone.aspx/1-877-247-7967

annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

47.    Seeking redress for these injuries, Plaintiff Hinton, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

48.    Plaintiff Hinton brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

49.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Hinton anticipates the need to amend the Class definitions following appropriate discovery.

13

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class because he received calls as part of the same campaign resulting in calls to other Class members.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether the Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b)     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Hinton will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Hinton has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Hinton and his counsel are committed to vigorously prosecuting this action on behalf

14

of the members of the Class, and have the financial resources to do so. Neither Plaintiff Hinton nor his counsel have any interest adverse to the Class.

53.    **Appropriateness**: This class action is also appropriate for certification because the Defendant acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Hinton. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hinton and the Pre-Recorded No Consent Class)**

54.    Plaintiff Hinton repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

15

55.    The Defendant transmitted unwanted telephone calls to Plaintiff Hinton and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

56.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

57.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Hinton individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

16

d) An injunction requiring the Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hinton requests a jury trial.

**JOSEPH HINTON**, individually and on behalf of all others similarly situated,

DATED this 2nd day of August, 2026.

By: /s/ *Stefan Coleman*

Stefan Coleman (Fla. Bar No. 30188)
COLEMAN PLLC
18117 Biscayne Blvd
Suite 4152
Miami, FL 33160
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman(Fla. Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Lead Attorney*